# HARTFORD LIFE ANNUITY INSURANCE COM-
# PANY *v.* UNSELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MISSOURI.

No. 224. Submitted March 23, 1892. — Decided April 4, 1892.

In an action to recover on a policy of life insurance, error in admitting evidence as to the mental and physical condition of the assured in his last days, when an overdue premium was paid and received, is held to be cured by the charge of the court that the only question was whether there had been a waiver by the insurer, and that it was immaterial whether the assured was or was not ill at that time.

As an action could not have been maintained against the insurer without offer to pay overdue premiums, evidence of such offer was properly admitted.

When the charge contains all that need be submitted to the jury on the issues, it is no error to refuse further requests to charge.

A life insurance company whose policy provides for the payment of premiums at stated times and further that the holder " agrees and accepts the same upon the express condition that if either the monthly dues," etc., " are not paid to said company on the day due, then this certificate shall be null and void and of no effect, and no person shall be entitled to damages or the recovery of any moneys paid for protection while the certificate was in force " may nevertheless by its whole course of dealing with the assured, and by accepting payments of overdue sums without inquiries as to his health, give him a right to believe that the question of his health would not be considered, and that the company would be willing to take his money shortly after it had become due without inquiry as to his health, and such a course of dealing may amount to a waiver of the conditions of forfeiture.

Courts do not favor forfeitures; but will nevertheless enforce them when the party by whose default they are incurred cannot show good ground in the conduct of the other party on which to base a reasonable excuse for the default.

If, in a case where the evidence warranted a request for a peremptory instruction to find for the defendant, no request for such instruction was made, it cannot be made a ground of reversal that the issues of fact were submitted to the jury.

THE court stated the case as follows:

This action was brought upon five certificates of member-ship, in the nature of policies of life insurance, issued by the

plaintiff in error to E. J. Unsell, the deceased husband of the defendant in error, who was the plaintiff below, numbered 24981 to 24985, inclusive, dated September 27, 1881, and each for the sum of $1000; also, upon a similar certificate, numbered 52143, for the sum of $5000, dated July 10, 1882. The charge of the court at the first trial will be found in 32 Fed. Rep. 443.

The petition alleged that the assured died December 31, 1885, having performed all the conditions of the policies on his part to be kept and performed. The answer denied that the assured died December 31, 1885, and alleged that his death occurred on January 31, 1886. It also alleged that none of the certificates were in force at the latter date by reason of the fact that the dues payable by the assured on the first day of January, 1886, were not paid at any time prior to his death; consequently the certificates of insurance ceased to be of any force or effect.

To the answer setting up this defence the plaintiff replied: "She admits that her husband, Elias J. Unsell, died January 31, 1886, and not December 31, 1885, as through clerical error was averred in the petition. Further replying, she denies that the said Elias J. Unsell failed to pay the monthly dues for the month of January, 1886, as averred in the answer, but avers the same were paid. And for further reply this plaintiff says that for several months before his death the said Elias J. Unsell was in such agony and pain of body as to seriously affect his mind and render him unfit for attention to any business; that in consequence thereof, said Unsell lost his memory and the knowledge of all his business affairs, but was fully conscious that he was about to die. That in December, 1885, and while he was so under disability and possessed of a consciousness of his approaching death, he informed plaintiff and his friends that he had paid up all that was due by him to the defendant; that plaintiff supposed and yet believes such to be the fact; that during the whole of the month of December, 1885, said Elias J. Unsell was at home confined to his bed; that he never received any notice, or had any knowledge that anything was due on any of said certificates, nor

had this plaintiff, or any of his friends, such knowledge until on or about January 26, 1886, when a notice was received through the mail from defendant that dues from January 1, 1886, were in arrears. That she at once, for said Elias J. Unsell, forwarded to defendant the sum of $5, to pay dues for the months of January and February, 1886, which sum was duly received by defendant and was kept by it and not returned until after defendant had learned of the death of said Elias J. Unsell.

"And for further reply, plaintiff says that defendant is and ought of right to be estopped from now setting up the alleged failure to pay said dues in advance as any defence; for she avers that during the whole time said Unsell has been the owner of certificates, in the defendant company, said defendant has without objection received from him the monthly dues long after the date on which by the terms of the contract they were payable, and had thereby led said Unsell to believe that the payment in advance was not essential and had waived the payment thereof in advance."

The material conditions of insurance under the several certificates were as follows:

"*Of payments.* The person to whom this certificate is issued agrees to pay to said company three dollars per annum, for expenses, on the first day of the month after date of issue, and at every anniversary thereafter, so long as this certificate shall remain in force; or by monthly or other *pro rata* installments of the same in advance for periods of less than one year.

"*Conditions of acceptance.* The holder of this certificate further agrees and accepts the same upon the express condition that if either the monthly dues, assessments or the payment of the ten dollars toward the safety fund, as hereinbefore required, are not paid to said company on the day due, then this certificate shall be null and void and of no effect, and no person shall be entitled to damages or the recovery of any moneys paid for protection while the certificate was in force, either from said company or the trustee of the safety fund."

It appeared in evidence that the company mailed at Hartford, January 21, 1886, a postal card as follows: "Hartford Life and Annuity Insurance Company. Reinstatement account. Elias J. Unsell, 308 North Commercial Street, St. Louis, Missouri. Certificates numbers 24981 to 24986 and 52143. Payments are in arrears for assessments ———, dues from January to May, $5. *Memorandum:* This should be returned when remittance is made ; also accompanying health certificate signed by the member. Reinstatement cannot be made without proper warrant that the member is alive and in good health." This card had on it the following blank form of health certificate: "I hereby warrant and declare that since the date of such certificate I have sustained no personal injury, nor been afflicted with any disease of a serious nature. That my habits are temperate now, and I am in a sound condition and good health, and I hereby apply to be reinstated in consideration thereof. Dated —— this —— day of ——— 188—."

The plaintiff testified that she received the above postal card on the 28th of January, 1886, and, on that day, addressed and mailed to the defendant's secretary at Hartford a letter as follows: "Enclosed please find $5, dues on my husband's policy 24981 to 24985, and 52143, from January 1, 1886." This letter was received by the defendant February 1, 1886.

On the 3d day of February, 1886, the plaintiff received from the defendant this postal card: "Hartford Life and Annuity Insurance Company. Reinstatement account. Elias J. Unsell, 308 North Commercial Street, St. Louis, Missouri. Certificate 24981. Payments in arrears, nothing. Assessment No. ———, installment on deposit ———, dues from January 1 to March 1, 1886, $7.50. Total payable at this date, $7.50. Assessment No. 30, for $45, will be due and payable March 1, 1886, if reinstatement is made. *Memorandum:* This should be returned when remittance is made, also accompanying health certificate signed by member. Reinstatement cannot be made without proof that the person is living and in good health." This notice was mailed February 1, 1886, and had upon it a blank health certificate like the one on the previous postal card.

Under date of February 8, 1886, the plaintiff wrote to the company as follows : " My husband, Elias J. Unsell, insured in your company under policy 24981 to 52143, died on Sunday, January 31.   Please send me blank proofs of loss that I may have the same properly executed."   The defendant, before receiving this letter, wrote to the plaintiff, under date of February 9, as follows: " We have just received information from our St. Louis agent, that the decease of your husband, Mr. E. J. Unsell, has taken place, and it being impossible in consequence that the membership issued by this company upon his life be reinstated by the furnishing of health certificate, for which we asked on February 1st inst., such health certificate being asked for because of the lapse of membership on January 1st last, we have to return you herewith $5.00, the same being the tender of your arrears made to us under date of January 28th, and which was unacceptable as notified to you, until our conditions have been complied with."

Evidence was introduced to show the course of business between the assured and the company during the whole period covered by the certificates, in respect to the payment of dues after the date fixed in the contracts of insurance.

The defendant asked the court to instruct the jury as follows :

" The court charges the jury that if they believe from the evidence that it was not because of a supposition that prompt payment of dues, payable January, 1886, would not be required, that such payment was not made, but because of the sickness or mental disability of the assured, then they will find for the defendant.

" The court charges the jury that the defendant was not required, by the terms of the certificates sued upon, to give the assured notice of the time when his dues were payable.   He was bound to know when such dues were payable and make his payments according to the terms and requirements of the certificates.

" The court charges the jury that they cannot find, from mere isolated instances of indulgence to the assured, that the defendant pursued such a course of business with him as led

him to believe that the defendant would not insist upon payment of dues, stipulated for and required in the policies, or certificates of membership.

"The course of business, in regard to time of payment, must have been general and uniform and such as would enable the jury to say that it was the settled practice in this regard, adopted by the defendant as to the assured."

The court refused to so charge the jury, and the defendant "duly excepted."

The jury having been charged by the court returned a verdict in favor of the plaintiff for the amount sued for, and judgment was entered against the company for $10,851.66. A motion for new trial was overruled.

*Mr. Chester H. Krum* for plaintiff in error.

I. Under a policy of life insurance, which requires payment of a premium on a day certain and specified, it is immaterial what was the mental or physical condition of the assured on such day. That he was sick will not excuse non-payment. *N. Y. Life Ins. Co.* v. *Statham*, 93 U. S. 24; *Klein* v. *Insurance Co.*, 104 U. S. 88; *Thompson* v. *Insurance Co.*, 104 U. S. 252, 257. Hence the trial court erred in admitting evidence, against the objection of the defendant, in regard to the mental and physical condition of the assured during the last month of his life.

II. Having erroneously permitted inquiry as to the mental and physical condition of the assured, at the time when his premium fell due and he failed to pay, it was the manifest duty of the trial court to leave it to the jury to determine: (*a*), Whether the failure to pay the premium resulted from the mental or physical incapacity of the assured at the time which would be no excuse for non-payment, or, (*b*), Whether such failure to pay the premium resulted from a reliance in a supposed waiver by the company of the condition requiring payment upon the day when due or within four days thereafter — which reliance, on the theory of the court, might be, an excuse for such non-payment.

Hence the propriety of the instruction asked by the defendant in regard to this phase of the case. For, if the assured did not pay, merely because he was sick, the jury ought to have been told to return a verdict for the defendant. If he did not pay because he supposed the condition had been waived, and the course of conduct of the defendant had been such as to legally justify such conclusion, then the plaintiff was entitled to a verdict. But the defendant was entitled to have the question of fact so left with the jury as to afford an opportunity for them to say, upon what circumstances depended the failure to pay the premium within the time stipulated for its payment.

III. The defendant was entitled to the instruction refused by the court below, which declared that it was not required, by the terms of the certificate sued upon, to give the assured notice of the time when his dues or premiums were payable. *Thompson* v. *Insurance Co.*, 104 U. S. 252, 258; *Insurance Co.* v. *Mowry*, 96 U. S. 544.

IV. There was no evidence which justified submission to the jury of the question of waiver. The defendant in error was permitted to try her case upon the theory that by its course of conduct, with reference to payment of dues, the plaintiff in error had waived the requirement of prompt payment. It is true, that a party always has the option to waive a condition or stipulation made in his favor. Equally true, that forfeitures are not favored in the law. But to create a waiver of conditions on which forfeiture may be claimed, there must have been some agreement, some declaration, some course of action evidencing an abandonment or withdrawal of such conditions. *Thompson* v. *Insurance Co.*, 104 U. S. 252, 259.

The condition of insurance in the present certificate is : " The holder of this certificate further agrees and accepts the same upon the express condition that if either the monthly dues, assessments or the payment toward the safety fund, as hereinbefore required, are not paid to said company on the day when due, then this certificate shall be null and void." To grant indulgence as to such payment upon one occasion, or

upon a series of occasions, does not prohibit the company from insisting upon the condition on subsequent occasions. *Mut. Ben. Life Assn.* v. *Ruse,* 8 Georgia, 534; *Winnesheik Ins. Co.* v. *Holzgrafe,* 53 Illinois, 516; *Wood* v. *Poughkeepsie Ins. Co.,* 32 N. Y. 619; *Baker* v. *Union Mut. Life Ins. Co.,* 43 N. Y. 283; *Mowry* v. *Home Ins. Co.,* 9 R. I. 346; *Thompson* v. *Insurance Co.,* 104 U. S. 252.

In fact the whole theory upon which the plaintiff was permitted to try her case was repudiated by this court in *Thompson* v. *Insurance Co., ubi sup.*

V. The verdict was wholly against the evidence, and the trial court ought to have set it aside on that ground. *Improvement Co.* v. *Munson,* 14 Wall. 442; *Pleasants* v. *Fant,* 22 Wall. 116; *Herbert* v. *Butler,* 97 U. S. 319; *Bowditch* v. *Boston,* 101 U. S. 16; *Griggs* v. *Houston,* 104 U. S. 553; *Randall* v. *Balt. & Ohio Railroad,* 109 U. S. 478; *Baylis* v. *Travellers' Ins. Co.,* 113 U. S. 316; *Conn. Mut. Life Ins. Co.* v. *Lathrop,* 111 U. S. 612. These cases hold that when a verdict would be set aside as being against the evidence, the court ought to direct a verdict. *A fortiori* is it the duty of a trial court to set aside a verdict, where it is wholly against the evidence.

*Mr. George D. Reynolds* for defendant in error.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

1. The court, against the objections of the defendant, permitted the plaintiff, testifying as a witness in her own behalf, to answer the following questions: "How long before his death had your husband been confined to his house?" "What was his condition; what was the state of his health, so far as enabling him to continue in business; what effect had it on his attention to business the month preceding his death?" "In what condition, mentally and physically, was Mr. Unsell at the receipt of that notice?" The notice referred to in the last question was the one from the company, mailed at Hart-

ford, January 21, 1886, and which stated that payments were in arrears for dues from January to May, $5. The admission as evidence of the answers to these questions is the foundation of some of the assignments of error in this court. It is sufficient to say that whatever error may have been committed by admitting this evidence was cured by the charge of the court to the jury; for they were instructed that there was but one question in the case, namely, as to the alleged waiver by the company of the terms of the contract in respect to the payment of premiums or dues at the times stipulated, and that it was immaterial whether the contract was a stringent one or not, or whether the assured was sick the last of December or in the first part of January.

2. There was no error in admitting as evidence the plaintiff's letter of January 28, 1886, transmitting five dollars for dues from January 1, 1886, on her husband's policies. That letter was written in reply to defendant's notice by postal card mailed January 21, 1886. It was competent as showing that the payment of the amount due January 1, 1886, was, in fact, made or tendered, though not at the precise time specified in the contract. If the plaintiff had sued on the policies or certificates without having paid or tendered the amount due to the company — the non-payment of which, at the time stipulated, was relied on to prove that the policies had become forfeited — that fact would have been fatal to a right to recover, in any view of the case. *Thompson* v. *Insurance Co.*, 104 U. S. 252.

3. The refusal of the court to give the instructions asked by the defendant is also assigned as error. But such refusal constitutes no ground for reversal, for the reason that the charge of the court contained everything that need have been said to the jury upon the single question submitted to them, namely, whether, under all the circumstances, the defendant waived a strict compliance with the stipulation in the contract as to the payment, at the times specified, of the premiums or dues on the certificates of insurance.

The court, among other things, said to the jury: " Nobody is bound to enter into any contract. It is perfectly voluntary

on the part of either side; but when they once enter in, the terms of the contract, as expressed in the writing, control. The plaintiff comes in, however, and says: ' Conceding that this contract reads in this way, the company by its conduct waived the necessity of a strict compliance.' She does not say the company so said to her, or to her husband, ' We do not insist upon this; we waive this;' but she says that the company so acted, so conducted itself in its dealings with her husband that he, as a prudent, reasonable man, did believe, and had the right to believe, that payment on the very day specified would not be insisted upon. Of course we speak by our actions, just as much as we do by our words; and although there may be no spoken word, no written word, declaring a waiver, yet it may be that a man by his conduct, his course of dealing, justly and fairly leads the other party to believe that he does not care about a strict compliance. That is what this plaintiff says was the case here; that while the contract reads 'payment must be made on specified days,' yet the company did not insist on such payment. It did, when her husband was alive and well, take the dues from him after the time specified and permit the policy to continue in force, and that it did so until he had a right, as a reasonable man, to believe, and did in fact believe, that that was to be the rule in the future. I do not think that any particular number of instances, one or more, can be said as a matter of law to make or not make a waiver. It is a question for you, as reasonable men, to consider what did the company intend; what would its conduct make a reasonable man believe in reference to it. . . . So far as the matter of notices is concerned, and the receipt of notice, it is a matter that need not concern you. The company did not contract to give notice; the policy specifies when the payments are due."

But the part, and the only part, of the charge to the jury to which the defendant excepted was in these words: " But the plaintiff says, that beyond these receipts of money after the day specified, there were instances in which money was received without any such notice. Now the question comes up in respect to that, was there such a continuance of business,

was the whole course of business, from the commencement to the close, such that from this and that, and from all the receipts and all the transactions, he had a right to believe and did believe that the question of health even would not be considered, and that it would be willing to take his money shortly after it had become due without inquiry as to his health? If so, that makes a waiver. If the company, by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say, ' You did not pay at the time.' I cannot say to you, as a matter of law, that one receipt, after the time specified, would make a waiver, or that fifty would. It is not in the numbers. The question is for you to consider and determine from all of them and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later. If the course of conduct was such that he had a right to believe that he could pay only in good health, then there was no waiver applicable to the case at bar. It must have been such a course of conduct as would lead a reasonably prudent man to believe that the company was willing to take payment, sick or well."

The law applicable to the case was stated to the jury with substantial accuracy. It is a mistake to suppose that the charge was inconsistent with the principles announced in *Thompson* v. *Insurance Company,* or in any other case decided by this court. In the case of *Insurance Company* v. *Eggleston,* 96 U. S. 572, 577, Mr. Justice Bradley, speaking for the court, said: " We have recently, in the case of *Insurance Co.* v. *Norton,* 96 U. S. 234, shown that forfeitures are not favored in the law ; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or any agreement to do so on which the party has relied and acted. Any agreement, declaration or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company

from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

These principles were not modified in *Thompson* v. *Insurance Company*. Alluding to the claim, in that case, that the company had, by its conduct, waived the requirement as to the punctual payment of premiums, Mr. Justice Bradley, again speaking for the court, said : " The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions." After observing that a fatal objection to the entire case was, that payment of the premium note there in question had never been made or tendered at any time ; that there might possibly be more plausibility in the plea of former indulgence and days of grace allowed, if payment had been tendered within the limited period of such indulgence ; and that "a valid excuse for not paying promptly on the particular day is a different thing from an excuse for not paying at all," the court proceeded : " Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party, on which to base a reasonable excuse for the default. . . . We do not accept the position that the payment of the annual premium is a *condition precedent* to the continuance of the policy. That is untrue. It is a condition subsequent only, the non-performance of which may incur a forfeiture of the policy, or may not, according to the circumstances. It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted. But it must be a just and reasonable ground, one on which the insured has a right to rely."

The principles of the above cases were reaffirmed in *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30, 34, *et seq.*

The charge was in entire consonance with the settled doctrines of this court as established in the cases to which we

have adverted. The only ground for serious doubt in respect to the case is, whether the evidence was sufficient in any view of it to sustain the theory that the defendant had by its course of business with the assured led him to believe, and that he, in good faith, believed, that the company waived, as to him, a strict performance of the conditions as to the payment of dues or. premiums, and whether if the court had given a peremptory instruction to find for the defendant, the verdict and judgment would have been disturbed. But we need not consider the case in those aspects; for the defendant assumed that it would be submitted to the jury, and asked instructions touching the several points on which it relied. It did not ask a peremptory instruction for a verdict in its behalf. It cannot, therefore, be a ground of reversal that the issues of fact were submitted to the jury. As no error of law was committed to the prejudice of the defendant, the judgment must be

*Affirmed.*