# EUREKA LIFE INSURANCE COMPANY *v.* HAWKINS.

INSURANCE; ESTOPPEL; FORFEITURE; DIRECTION OF VERDICT.

1. Forfeitures which are the result of technical provisions in contracts of insurance, are not looked upon favorably by the courts (following *National Benefit Asso.* v. *Elzie*, 35 App. D. C. 294) especially in the case of so-called industrial policies issued to illiterate persons.

2. An insurance company which for seven months after a policy of life insurance had lapsed, according to its terms, by reason of the nonpayment of premiums for more than four weeks, continues, with full knowledge of that fact, to send its collector to solicit and receive payment of premiums, which he transmitted to the company, without insisting upon a certificate of health, which it was entitled to demand, is estopped from claiming a forfeiture. (Citing *Union S. L. I. & T. Co.* v. *Bond*, 16 App. D. C. 579.)

3. It is not error for the court in an action upon an insurance policy, to direct a verdict for the plaintiff on the ground that the company had estopped itself from claiming a forfeiture, instead of permitting the jury to determine whether the company had waived the forfeiture provisions, where the company demanded, collected, and retained premiums after, under the strict letter of the policy, it had lapsed, and accepted all arrearages and premiums subsequently accruing, without insisting upon a certificate of health, which it was entitled to demand—although it would possibly be better to permit the jury to determine whether upon the whole evidence the company had not waived the forfeiture provisions of the policy. (Citing *Union Security L. Ins. & T. Co.* v. *Bond*, 16 App. D. C. 579, and *National Benefit Asso.* v. *Elzie*, 35 App. D. C. 294.)

No. 2411.   Submitted November 4, 1912.   Decided December 2, 1912.

HEARING on appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon verdict in an action to recover the amount due under a life insurance policy.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District upon a directed verdict for the plaintiff, Susan Hawkins, in an action for the recovery of $96 under a policy of insurance on the life of Scott Hawkins, the plaintiff, appellee here, being the beneficiary.

The policy was issued by the defendant, Eureka Life Insurance Company of Baltimore, Maryland, a corporation, on April 12, 1909, and it therein agreed to pay the above sum upon the death of the insured in consideration of the payment of a weekly premium of 10 cents. Under clause 8 of the policy it is stated that agents, including superintendents and assistant superintendents, are not authorized and have no power to make, alter, or discharge contracts, waive forfeitures, or receive premiums in arrears more than four weeks, and that all such arrears given to an agent shall be at the risk of those who pay them. Another clause provides for the revival of the policy if not more than fifty-two premiums are due, upon the payment of all arrears and presentation of evidence satisfactory to the company of the sound health of the insured. Another clause provides that policies upon which premiums are due four successive weeks thereby become lapsed, whether the proper entries of such lapse are made upon the books of the company or not. Full payment of all due premiums and the passing by the insured of a medical examination satisfactory to the company will revive the policy. Payments of money after the policy has been in arrears more than four weeks, it is provided, will not revive the policy but will entitle the policy holder to a return, upon a demand, of such payments. It is further provided that failure of the collector to call for premiums will not be deemed an excuse for nonpayment, "as policy holders can pay their premiums at the office at any time."

All premiums were regularly paid to the company's collector from the date of the policy to January 10, 1910. More than four weeks elapsed before the next payment of 50 cents, which was made February 25th, following. A payment of 30 cents was made March 28th, of 30 cents April 18th, of 40 cents May

16th, of 10 cents May 31st, of 25 cents July 7th, of 70 cents July 18th, of 75 cents August 18th, and a final payment of 10 cents on August 25th. The payment of August 18th not only included all arrearages, but anticipated payments to August 29th. The payment of August 25th included premiums to September 5th. The insured died on August 28th. Each of the nine payments, commencing with February 25th, when payments were more than four weeks in arrears, was made to the collector of the company, *who called for the same,* and who turned the money over to the company "in the same way as other payments or collections." The collector did, however, indorse these collections upon a so-called conditional receipt which he gave the insured, and which contained a stipulation that the policy would not be considered in force until all back premiums had been paid, nor until the policy holder had furnished the company with a certificate showing that he "is in perfect health."

Plaintiff testified that she was the wife of the insured and had paid the premiums upon his policy; that she could neither read nor write, but had been assured by the agent of the company that the policy was in full force. There was corroboration of this testimony, although an exception was noted as to its admissibility on the ground that the policy prohibited the agent from varying any of its terms. The assistant local superintendent for the company testified that he had advised the plaintiff at the time of the giving of said conditional receipts that the policy had lapsed. He further testified, under cross-examination, that he had made an effort to get the insured to furnish a certificate of health; that he had been to the house of the insured two or three times to get the insured to furnish a certificate of health, but no one answered his knocks at the door. He did not, however, explain the difference between the knocks when premiums were collected and the knocks when he went to get the certificate of health.

*Mr. W. A. Coombe* for the appellant.

*Mr. A. B. Webb* and *Mr. J. B. Stein* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Courts of justice do not look with favor upon forfeitures which are the result of technical provisions in contracts of insurance. *Hartford Life Annuity Ins. Co.* v. *Unsell,* 144 U. S. 439, 36 L. ed. 496, 12 Sup. Ct. Rep. 671; *National Benefit Asso.* v. *Elzie,* 35 App. D. C. 294. Especially is this true where there is involved a so-called industrial insurance policy, like the one here in issue; since policy holders of this kind are frequently illiterate and generally little versed in business matters, hence more likely to be guided by the conduct and acts of the company than by the technical provisions of the policy. Indeed, it is to be regretted that more adequate protection against the harshness of such contracts is not provided by statute.

The company, after premiums were more than four weeks in arrears and with full knowledge of that fact, sent its agent to make further collections of premiums. It not only sent him once but nine times, and each one of the payments thus made was turned over to the company "in the same way as other payments or collections." The collection made August 18th prepaid the policy to August 29th, and another payment was subsequently made which prepaid the policy, as already noted, to September 5th. For ten days, therefore, prior to the death of the insured, all arrearages had been paid. For a period of about seven months after the company *now* says the policy had lapsed, it continued to solicit and receive payment of premiums thereunder from the insured. The testimony of the assistant superintendent of the company, to the effect that he made several efforts to gain admission to the home of the insured for the purpose of obtaining a certificate of health, indicates that, under the interpretation which the company placed upon the provision in the policy that such a certificate be furnished, the company was to take the initiative here as in the collection of premiums. When the collection of August 25th was made all arrearages had been paid for a week, and yet this collection was made with the full knowledge on the part of the company that

no certificate of health had been furnished. As pointed out, in *Baltimore L. Ins. Co.* v. *Howard,* 95 Md. 244–257, 52 Atl. .397, "this is a very different condition from the ordinary transmission of the premium by the insured." While the transmission of the premium by the insured is merely his act, the *collection* of a premium by the company negatives the suggestion now made that the company did not then consider the policy in force. "The act of the company in sending its inspector to make collections, after the instalments which had been in default *had been paid up,* obviously implies that the company considered that it had the *right* to collect; but the *right* to collect, that is, to demand payment, cannot exist if the policy has been forfeited. \* \* \* A demand of payments after the arrearages alleged to have caused a forfeiture had been settled is therefore equivalent to an assertion that there is money due by the insured to the company, and as no money can be due if the policy has lapsed, the demand, if unqualified, is simply an .assurance that the policy is in force."

The demand, collection, and retention by the company of premiums after, under the strict letter of the policy, it had lapsed, and the demand, receipt, and retention of a premium after all arrearages had been collected, and without insisting upon a certificate of health, ought and does estop the company from now contending for a forfeiture. See *Union Security Life Ins. & T. Co.* v. *Bond,* 16 App. D. C. 579–587. While possibly it would have been better to have permitted the jury to determine whether, upon the whole evidence, the company had not waived the forfeiture provisions of the policy (*National Benefit Asso.* v. *Elzie,* 35 App. D. C. 294; *Hartford Life Annuity Ins. Co.* v. *Unsell,* 144 U. S. 439, 36 L. ed. 496, 12 :Sup. Ct. Rep. 671; *Baltimore L. Ins. Co.* v. *Howard,* 95 Md. 244, 52 Atl. 397), we think upon the admitted facts it was not error for the court to direct a verdict upon the theory that the company had estopped itself from claiming a forfeiture. .Judgment is therefore affirmed, with costs.       *Affirmed.*