## Hood *v.* Prudential Insurance Company of America, Appellant.

*Insurance—Life insurance—Evidence—Husband and wife—Wife as witness.*

In an action upon a policy of life insurance, where it appears that it is declared on the face of the policy that the policy shall be void if the insured is not in sound health on the date of its execution, the wife of the insured is a competent witness for the insurance company to prove the fact that her husband suffered from consumption prior to the issuance of the policy, unless her information upon that subject was acquired in some way through a confidential communication from him.

In such a case the company's medical examiner is a competent witness to show that the insured was not in sound health at the date of the execution of the policy, although it appears that the application was not attached to the policy.

*Insurance—Life insurance—Reasonable condition—Evidence.*

Where a condition in a policy of life insurance is to the effect that the policy shall be void, if on a prior policy in the same company permission to insure is not indorsed, and such condition is attacked as unreasonable, the insurance company is entitled to offer evidence of facts tending to show that the condition is reasonable.

Argued Oct. 17, 1902.   Appeal, No. 118, Oct. T., 1902, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1901, No. 252, on verdict for plaintiff in case of William P.

Hood, Executor of Harry L. Hood, Deceased, v. Prudential Insurance Company of America. Before RICE, P. J., BEAVER, ORLADY and W. D. PORTER, JJ. Reversed.

Assumpsit on four policies of life insurance. Before RALSTON, J.

At the trial it appeared that the policy contained, inter alia, these provisions :

" First.—Preliminary Condition : No claim will be paid on this policy in case of the death of the insured before the date hereof, nor unless on said date the insured is alive and in sound health.

" Fourth.—Policy when Void : This policy shall be void if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement, signed by the president or secretary, authorizing this policy to be in force at the same time."

Defendant made the following offer :

Mr. Shoyer stated that he proposed to prove by the witness (Elizabeth S. Hood), who is the widow of Harry L. Hood, that Mr. Hood had consumption for more than two years prior to the issuance of the policies in this case.

Objected to. Objected sustained. Exception for defendant. [1]

Dr. Alonzo H. Stewart, witness called by the defendant, was asked this question :

" Q. Will you state whether or not there was anything said to you, or anything said to Hood about prior insurance upon his life ? "

Mr. Shoyer : " Q. I show you four applications, which are the applications upon which the policies in suit were issued . . . . Did you have those applications with you at the time you saw Mr. Hood in August, 1899 ? (Paper shown witness.) A. I did, sir. Q. Will you state whether or not there was anything said to you, or anything said to Hood about prior insurance upon his life ? "

Objected to. Objection sustained. Exception for defendant. [2]

" Q. As a good result of your examination, did you pass this man as a good risk ? "

Objected to.   Objection sustained.   Exception for defendant. [3]

"Q. Did you have a conversation with the insured, Harry L. Hood, when you called upon him with these applications at the time concerning which you have testified?   A. I did. Q. Will you state what that conversation was?"

Objected to.   Objection sustained.   Exception for defendant. [4]

Defendant offered in evidence application No. 77,776 dated October 17, 1894, as the application of Harry L. Hood for $500 additional insurance on that date.   Objected to.   Objection sustained.   Exception for defendant. [5]

Defendant offered to prove that the first policy No. 5,170,086, dated October 3, 1892, in the sum of $130 on the life of Harry L. Hood was paid by the company.   Objected to.   Objection sustained.   Exception for defendant. [6]

The court charged as follows:

[The policy contains a clause providing that it shall be void if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary of the company authorizing this policy to be in force at the same time.

It has been shown by the testimony and by the production of the policy dated October 3, 1892, that there was another policy issued by this company at the time these policies were taken out, but the court has stated to counsel that an insurance company which issues a new policy cannot say that because they have not an indorsement on a policy previously issued by them, they can avoid the new policy and escape liability on it.

That is the only defense that has been made, and if you believe the testimony for the plaintiff, you may find a verdict for him.] [7]

Verdict and judgment for plaintiff for $212.   Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence; (7) charge of the court.

*Frederick J. Shoyer*, for appellant.

*George Wentworth Carr,* for appellee.

OPINION BY BEAVER, J., February 11, 1903:

Harry L. Hood, of whose will the plaintiff is the executor, made six several applications to the defendant for insurance upon his life. Upon the first a policy was issued October 3, 1892, for the sum of $130, payable to his wife. A second was made October 17, 1894, which, after a medical examination, was rejected, the fact of its rejection being marked upon the first policy which was in force. The remaining four were subsequently made, upon which, on August 28, 1899, four several policies, payable unto the executors, administrators or assigns of the insured, were issued, to which the applications were not attached, in each of which were contained the following conditions: "First. Preliminary condition. No claim will be paid on this policy, in case of the death of the insured before the date hereof, nor unless on said date the insured is alive and in sound health. Fourth. Policy when void. This policy shall be void if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time; or if any of the representations upon which this policy is granted are not true; or if the said weekly premium shall not be paid according to the terms hereof; . . . . If for any cause this policy be or become void, all premiums paid thereon shall be forfeited to the company, except as provided herein." The present suit was brought to recover the amount of the said several policies, being $50.00 each.

The questions presented for our consideration, with a single exception, are all raised by offers of testimony made by the defendant and rejected upon objection by the plaintiff. None of the grounds upon which the objections were based and none of the reasons for sustaining them are given in the record and we are, therefore, left to infer them as best we can from the character of the offers themselves.

1. The defendant offered to prove by Elizabeth S. Hood, "widow of Harry L. Hood, that Mr. Hood had consumption for more than two years prior to the issuance of the policies in this case." The offer was objected to and the objection sustained and is assigned for error.

The widow was a competent witness. Whether the course of her examination would have developed questions which were incompetent could only appear by the examination itself. The general standard by which the competency of witnesses is measured is the Act of May 23, 1887, P. L. 158. Clause (*c*), section 5, provides: "Nor shall husband and wife be competent or permitted to testify against each other, except" in the proceedings therein specified. As was said by President Judge Rice in Strause v. Braunreuter, 4 Pa. Superior Ct. 263: "No interest or policy of law now makes any person an incompetent witness in any civil case or proceeding, unless he is shown to come within one of the specified exceptions, and the only exceptions, we are here called upon to consider are those contained in clauses (*c*) and (*e*) of section 5," etc." . . . . "Nor was she an incompetent witness under clause (*c*). What she proposed to testify to was in no sense a confidential communication and the common-law rule which prevents the husband or wife from divulging in testimony such communications after the death of the other does not apply. The wife, after the death of the husband, is competent to prove facts coming to her knowledge from other sources and not by means of her situation as a wife, notwithstanding they related to the transactions of her husband: 1 Greenfield on Evidence (15th ed.), sec. 338 ; Cornell v. Vanartsdalen, 4 Pa. 364 ; Peiffer v. Lytle, 58 Pa. 386 ; Robb's Appeal, 98 Pa. 501." See also Dumbach v. Bishop, 183 Pa. 602. The wife was a competent witness to prove the fact that her husband suffered from consumption prior to the issuance of the policies in controversy, unless her information upon that subject had been acquired in some way through a confidential communication from him. If, for example, it had been communicated by the physician, in the presence of her husband ; if she had discovered the fact as an ordinary nurse might have discovered it, or if in any of the ways by which any ordinary person might have become acquainted with the fact, her testimony was competent and should have been received. If questions had been asked during her examination which were in violation of the rule, they could have been excluded at the time, but as to her general competency as a witness to testify as to her husband's condition, we have no doubt. The first specification of error is, therefore, sustained.

2. The policies, upon which the suit is founded, were by their terms void, if the insured was not " alive and in sound health " at the time of their date. Was he in sound health? In so far as the examination of Dr. Stuart, who was the examining surgeon, tended to show that he was not in sound health as a matter of fact, we think his testimony should have been admitted. We are not able to determine from the offers, the rejection of which is complained of in the second, third and fourth assignments of error, whether they tended to show that or not. As already intimated, the object of the offer is not stated and no reasons are given for their rejection. The object of the Act of May 11, 1881, P. L. 20, was to relieve policy-holders from warranties contained in their application, unless said application was attached to the policy, but it has not been held, so far as we know, that the fact of whether the insured was in sound health or not, could not be proved outside the application. It probably would not be proper to show the contents of the paper. Certainly not, if the insured or his representatives were to be bound by anything contained in the paper from the effects of which he is relieved by the act of assembly, but substantive facts not connected with the representations contained in the application may undoubtedly be proved by competent testimony outside the application. The question here is not whether the legal representative of the insured is bound by the answers contained in the application, but was he in good health, as a matter of fact? If the offers bore upon this question or tended to show that the insured was not in good health, to that extent the testimony should have been received.

3. The policies are also void by their terms " if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time." The insured accepted the policy with that condition in it. Is it a reasonable condition? There is not sufficient testimony in the case, it seems to us, to determine that question. If, as is intimated, the company keeps its records entirely by the number of the policy and not by the name of the insured, for the reason that it is impossible to determine from mere name and descrip-

tion whether the individual taking additional policies is the same as the one previously insured, it may be that this provision would be not only reasonable but absolutely essential to the proper conduct of the business of the defendant company. Inquiry in this direction seems to have been shut off entirely by the rejection of the offers made by the defendant.

4. It follows, therefore, that the portion of the charge of the court complained of in the seventh assignment of error is open to objection. We do not say that, under a state of facts not in evidence, it might not have been correct, but, as we regard the testimony, the case was not in a situation which justified the court in ruling positively that the condition in the policy referred to was void.

For the reasons stated, the second, third, fourth, fifth, sixth and seventh assignments of error are also sustained.

It may not be amiss to remark that assignments of error to the admission of testimony can be much more satisfactorily disposed of by us, when the object of the offer is stated and a brief reason for its rejection given by the court. For the reasons that these are entirely wanting in this case, it has been somewhat difficult for us to determine definitely to what extent error was committed in regard to the rejection of several of the offers made by the defendant. But the evident general tendency of the offers was in the direction of relevant testimony as to the insured being in unsound health when the policies under which a recovery was sought were issued.

Judgment reversed and a new venire awarded.